# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

|  |  |
|---|---|
| CSC Leasing Co., <br><br> *Plaintiff*, <br><br> v. <br><br> Denvr Dataworks USA, Inc., & <br> Denvr Dataworks Corp., <br><br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 3:25-CV-00731 <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff CSC Leasing Co. ("CSC"), through counsel, files this Complaint against Denvr Dataworks USA, Inc. ("Denvr Dataworks USA") and Denver Dataworks Corp. ("Denvr Corp.") In support, CSC states as follows:

## PRELIMINARY STATEMENT

1. CSC has leased various items of personal property and equipment to Denvr Dataworks USA pursuant to a master lease agreement and corresponding lease schedules. As of the filing of this Complaint, Denvr Dataworks USA owes to CSC monetary relief not less than $12,583,980.13. Denvr Corp. is the parent corporation of Denver Dataworks USA and guaranteed the payment and performance of Denvr Dataworks USA's obligations due and owing to CSC under the master lease agreement. Accordingly, CSC files this Complaint to recover that sum, and related

James K. Donaldson, Esq. (VSB No. 80307)
Jonathan DeMars, Esq. (VSB No. 96426)
Troutman Pepper Locke LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 697-1200 (telephone)
(804) 697-1339 (facsimile)
jed.donaldson@troutman.com
jonathan.demars@troutman.com

*Counsel to Plaintiff CSC Leasing Co.*

318779363v6

relief, from Denvr Dataworks USA and Denvr Corp.

## PARTIES

2.      Plaintiff CSC is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 6802 Paragon Place, Suite 350, Richmond, Virginia 23230.

3.      Defendant Denvr Dataworks USA is a corporation organized under the laws of the state of Delaware, and, at all relevant times, Denvr Datawork's principal place of business and headquarters has been 1325 Avenue of the Americas, 20th Floor, New York, New York 10019.

4.      Defendant Denvr Corp. is a corporation organized under the laws of Canada, and, at all relevant times, Denvr Corp.'s principal place of business and headquarters has been 2256 6th Avenue SW, Suite 2700, Calgary, Alberta, Canada T2P 1N2.

5.      On information and belief, Defendant Denvr Corp. is the parent entity and sole shareholder of Denver Dataworks USA.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(1) and (a)(3) because (i) the amount in controversy exceeds $75,000.00, excluding interest, costs, and fees; and (ii) the action is between citizens of different states and a citizen of a foreign country is also a party.

7.      The Court has exclusive personal jurisdiction over CSC and Denvr Dataworks USA pursuant to the Master Lease, defined below, which states that the "Parties agree that any legal action, suit, or proceeding arising out of based on this Master Lease, any Schedule(s), or the transactions contemplated hereby or thereby may be instituted in the *federal courts of the United States located in the city of Richmond, Virginia*, or the courts of the Commonwealth of Virginia

located in the County of Henrico, Virginia (hereinafter, the 'Proper Courts'), and each Party irrevocably submits to the *exclusive jurisdiction* of the Proper Courts in any such legal action, suit or proceedings." (Master Lease, **Exhibit 1**, at 6, § 15(j) (emph. added).)

8.  Section 15(j) of the Master Lease also states:

> [T]he Parties further hereby agree to waive and not to assert as a defense in any such legal action, suit, or proceeding covered by this Section 15(j) that (i) any of the Proper Courts cannot exercise personal jurisdiction over a Party; (ii) any Party is immune from extraterritorial injunctive relief or other injunctive relief; (iii) such action, suit, or proceeding Section 15(j) may not be maintained in any of the Proper Courts; (iv) such action, suit or proceeding brought in any of the Proper Courts should be dismissed or transferred on the grounds of *forum non conveniens*; (v) such action, suit or proceeding should be stayed by the pendency of any other action, suit, or proceeding in any court or tribunal other than the Proper Courts, or (vi) this Master Lease may not be enforced in or by any of the Proper Courts.

(**Ex. 1**, at 6, § 15(j).)

9.  Denvr Dataworks USA expressly consented to venue in, and the jurisdiction of, the Richmond Division of the U.S. District Court for the Eastern District of Virginia.

10. With respect to Denvr Corp., on, or about, May 8, 2024, Denvr Corp. executed that certain guaranty agreement in favor of CSC, as lessor (the "Guaranty"). (**Exhibit 2**, attached hereto, is a true and accurate copy of the Guaranty.)

11. Denvr Corp. guaranteed Denvr Dataworks USA's obligations—including payment and performance—due and owing to CSC under the Master Lease.

12. At § 13, the Guaranty states:

> 13. This agreement is deemed to be made and performed in the County of Henrico, Commonwealth of Virginia, and its terms and conditions shall be governed and construed according to the laws of Virginia (without regard to the conflict of laws principles of such state), including all matters of construction, validity and performance, and its terms and conditions shall be governed and construe according to the laws of that state; and no defense given or allowed by the laws of any other state or county shall at any time be interposed or allowed unless such defense is also valid under the laws of Virginia.

(**Ex. 2**, at 3.)

13. In May 2025, CSC, Denvr Dataworks USA, and Denvr Corp., each, entered into

and executed a forbearance agreement, concerning certain of Denvr Dataworks USA's defaults (the "May 2025 Forbearance Agreement"). (**Exhibit 3**, attached hereto, is a true and accurate copy of the May 2025 Forbearance Agreement.)

14. Under the May 2025 Forbearance Agreement, the parties—CSC, Denvr Dataworks USA, and Denvr Corp., agreed to the following:

> g. Governing Law and Venue. This Agreement shall be governed and construed in all respects by the laws of the Commonwealth of Virginia without regard to its conflicts of laws provisions. The parties agree that the federal and state courts located in Richmond, Virginia shall have the sole and exclusive jurisdiction over any dispute arising hereunder.

(**Ex. 3**, at 3.)

15. The U.S. District Court for the Eastern District of Virginia may exercise personal jurisdiction over Denvr Corp.

16. As to both Denvr Dataworks USA and Denvr Corp., venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of events and omissions giving rise to CSC's claims and causes of action against each of Denvr Dataworks USA and Denvr Corp. occurred in this District.

## FACTS

**A. The Master Lease**

17. CSC, as lessor, and Denvr Dataworks USA, as lessee, executed that certain Master Lease Agreement No. 2024034, which is dated and effective as of May 8, 2024 (the "Master Lease"). (**Exhibit 1**, attached hereto, is a true and accurate copy of the Master Lease.)

18. The Master Lease provides the controlling terms as to various documents and supplementary agreements, lease schedules, acceptance certificates, and notices executed in connection with the Master Lease (collectively, and together with the Master Lease and the Guaranty, the "Lease Documents").

19. The Master Lease states that Virginia law shall control and govern as to any

disputes concerning the Lease Documents.  (**Ex. 1**, at 6, § 15(g).)

20. Section 4(a) of the Master Lease requires Denvr Dataworks USA to "pay to [CSC] as rental for the Equipment leased under each Schedule the Basic Rental set forth in such Schedule and this Section 4."  (**Ex. 1**, at 1, § 4(a).)

21. Section 4(a) of the Master Lease also provides that "[t]he Basic Rental shall be due and payable in advance on or before the first (1st) day of each month beginning on the Commencement Date in the amounts and on the dates set forth in such Schedule . . ."  (**Ex. 1**, at 1, §4(a).)

22. In accordance with §4(a) of the Master Lease and in practice, CSC has issued to Denvr Dataworks USA invoices for monthly rent approximately 30 days prior to the month for which monthly rent, and other monthly charges, are due.

23. In addition to the Basic Rental due to CSC, the Master Lease requires Denvr Dataworks USA to "pay to [CSC] an amount equal to all taxes that are levied or based on this transaction, the Basic Rental, this Master Lease, any and all Schedules, and/or the Equipment or its use, lease, sale, operation, control or value, including, without limitation, state and local sales, use, excise, purchase, property, added value or other taxes, or amounts . . . ."  (**Ex. 1**, at 1-2, § 4(b).)

24. The tax amounts that the Master Lease requires Denvr Dataworks USA to pay, or reimburse, to CSC include personal property taxes that are assessed periodically by the jurisdiction and location in which the Leased Equipment is located.  (**Ex. 1**, at 2, § 4(b).)

25. Under the Master Lease, "[t]he Equipment shall at all times remain the property of [CSC] . . . and [Denvr Dataworks USA] acknowledges and agrees that it does not and shall not obtain any title to the Equipment by virtue of the execution of this Master Lease or by payment or

performance hereunder, unless so specified in a Schedule or other agreement . . ." (**Ex. 1**, at 2, § 5(a).)

26. The Master Lease requires Denvr Dataworks USA to "keep the Equipment free and clear of all liens, encumbrances, interests, and claims of any kind and nature." (**Ex. 1**, at 2, § 5(e).)

27. Section 6(e) of the Master Lease provides that "[Denvr Dataworks USA] will defend, protect, indemnify and hold harmless [CSC] . . . against any and all losses, damages, injuries, claims, demands, liabilities, costs, and expenses, including, without limitation, reasonable attorney's fees (collectively, 'Claims'), arising out of or in connection with this Master Lease, any Schedule or any other document relating thereto . . ." (**Ex. 1**, at 2, § 6(e).)

28. Section 7 of the Master Lease requires Denvr Dataworks USA to obtain, and pay for, insurance coverage for the Leased Equipment and that CSC shall be a named insured and loss payee under such insurance policies. (**Ex. 1**, at 3, § 7.)

29. Section 7 of the Master Lease requires that Denvr Dataworks USA provide to CSC "a certificate of insurance or other evidence . . . that such insurance coverage is in effect and which includes a stipulation that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to [CSC] . . ." (**Ex. 1**, at 3, § 7.)

30. Section 11(a) of the Master Lease states that "[t]he failure by [Denvr Dataworks USA] to pay the Basic Rental or other monies when due, if such failure continues for five (5) or more business days" shall be an Event of Default. (**Ex. 1**, at 4, § 11(a).)

31. Section 11(g) of the Master Lease states that "[t]he occurrence of any default or anticipatory repudiation under any guaranty of any Schedule" shall be an Event of Default. (**Ex. 1**, at 4, § 11(g).)

32. Section 11(i) of the Master Lease states that "[t]he default by [Denvr Dataworks

USA] or [Denvr Corp.] under any loan, lease, guaranty or other financial obligation to [CSC] or its affiliates, which entitles [CSC] or is affiliates to exercise remedies" shall be an Event of Default. (**Ex. 1**, at 4, § 11(g).)

33. Section 12 of the Master Lease states that CSC's rights and remedies upon an uncured Event of Default by Denvr Dataworks USA include, without limitation, to "proceed by appropriate suit, action or other proceeding, at law or in equity, to enforce payment and performance by [Denvr Dataworks USA] of its covenants and other obligations under this Master Lease and the applicable Schedule(s), or to recover from [Denvr Dataworks USA] or any and all Guarantors, all damages and expenses that [CSC] . . . shall have sustained by reason of [Denvr Dataworks USA's] default and in the enforcement of the Remedies hereunder . . ." (**Ex. 1**, at 4-5, § 12.)

34. Section 12 of the Master Lease states that CSC's rights and remedies upon an uncured Event of Default by Denvr Dataworks USA include, without limitation, to "enter any premises where any equipment is located and take immediate possession of and remove (or disable in place) such Equipment by self-help, summary proceedings or otherwise without liability . . ." (**Ex. 1**, at 4-5, § 12.)

35. Section 12 of the Master Lease states that CSC's rights and remedies upon an uncured Event of Default by Denvr Dataworks USA include, without limitation, to "recover all accrued and unpaid amounts due on or before the date [CSC] declared the applicable Schedule in default . . ." (**Ex. 1**, at 5, 12.)

36. Section 12 of the Master lease provides that: "[u]pon the occurrence of an Event of Default by which [Denvr Dataworks USA] has failed to pay timely to [CSC] any Basic Rental or other monetary amount(s) due hereunder, [Denvr Dataworks USA] shall be deemed to have

forfeited the full amount of any Security Deposit to [CSC] which shall be applied and credited towards the Stipulated Loss Value." (**Ex. 1**, at 5, § 12.)

37. Section 12 of the Master lease provides that: "[Denvr Dataworks USA] shall be liable to [CSC] for all costs, fees, interest, and expenses (including, without limitation, reasonable attorneys' fees) incurred by [CSC] in enforcing any of its rights and Remedies set forth herein." (**Ex. 1**, at 5, § 12.)

**B. Lease Schedules And Corresponding Acceptance Certificates**

38. Pursuant to the Master, CSC and Denvr Dataworks USA executed twenty-one (21) lease schedules: A, B, C, D, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, and V (collectively, the "Lease Schedules"; each a "Schedule"). (**Exhibit 4**, attached hereto, includes a true and accurate copy of each of the Lease Schedules.)

39. In the aggregate across all Lease Schedules, Denvr Dataworks USA paid to CSC the sum of $1,075,824.00 in the form of advance payments and security deposits.

40. **Schedule 1**, attached hereto, details the Lease Schedules, including date of commencement, basic monthly rent, monthly rent inclusive of taxes, past due rent including certain taxes, prospective accelerated rent, and months remaining on the original term of each schedule.

41. With respect to each Lease Schedule and each item of the Leased Equipment, Denvr Dataworks USA executed a corresponding acceptance certificate (collectively, the "Acceptance Certificates"; each, an "Acceptance Certificate"). (**Exhibit 5**, attached hereto, is compilation of a true and accurate copy of each of the Acceptance Certificates.)

42. In each Acceptance Certificate, Denvr Dataworks USA certified that the relevant Leased Equipment "has been (i) inspected by authorized representatives of [Denvr Dataworks USA]; (ii) installed and placed in good working order, and (iii) accepted by [Denvr Dataworks

USA] for leasing under all provisions of the Lease; and (b) that [Denvr Dataworks USA] is obligated to pay the rentals and all other sums provided for in the Lease with respect to the Equipment . . ." (**Ex. 5**.)

### C. The Denvr Corp. Guaranty

43. On, or about, May 8, 2024, Denvr Corp., as guarantor for, and the parent company of, Denvr Dataworks USA, executed the Guaranty, as well as CSC and Denvr Dataworks USA. (**Ex 2**.)

44. The officers of each of Denvr Dataworks USA, as lessee, and Denvr Corp., as guarantor, who executed the Guaranty are identical and hold the same position with each entity, as follows:

**GUARANTOR:**

DENVR DATAWORKS CORP.

By: *Stephanie Bunch*
Name: Stephanie Bunch
Title: CFO

By: _____
Name: Robert Geoffrey Gordon
Title: CEO

**LESSEE:**

DENVR DATAWORKS USA, INC

By: *Stephanie Bunch*
Stephanie Bunch
CFO

By: _____
Robert Geoffrey Gordon
CEO

(**Ex. 2**, at 4.)

318779363v6

    45.    Section 1 of the Guaranty provides:

> 1.    Guarantor, jointly and severally, unconditionally guarantees and promises to pay Lessor, its assigns and transferees, on demand, all of the Obligations as herein above mentioned Lease. Guarantor also jointly and severally, unconditionally guarantees the performance and discharge of all Lessee's Obligations under the Lease. This is a guaranty of payment and performance and not of collection, so Lessor can enforce this Guaranty against Guarantor even when Lessor has not exhausted Lessor's remedies against anyone else obligated to pay the Obligations or against any collateral securing the Lease, this Guaranty or any other guaranty of the Obligations. The Obligations as hereby assumed by Guarantor shall continue and remain in force and effect until all Obligations are paid in full under the Lease. Provided, however, that this Guaranty shall not apply to any Obligations incurred after actual receipt by Lessor or its assigns of written notice of Guarantor's revocation as to future Obligations shall not affect any outstanding Obligations.

(**Ex. 2**, at 1.)

    46.    CSC has never received written notice of Denvr Corp.'s revocation of any Obligations due and owing to CSC and guaranteed by Denvr Corp.

    47.    Section 3 of the Guaranty provides that "[t]he liability of [Denvr Corp.] is [a] primary and direct obligation without regard to any other obligor or security or collateral held by [CSC] or its assigns." (**Ex. 2**, at 1.)

    48.    Section 7 of the Guaranty provides:

> 7.    Guarantor authorizes Lessor or its assigns, without notice demand and without affecting their liability hereunder, from time to time, to:
>
>     (a)    renew, modify, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of any instrument or the Obligations pertaining to this lease schedule or any part thereof;
>     (b)    take and hold security for the payment of this Guaranty or the Obligations, and exchange, enforce, sell, waive, and release and surrender any such security with or without the substitution of new collateral;
>     (c)    release, substitute, agree not to sue, or deal with any one or more of Lessee's sureties, endorsers, or other guarantors on any terms or in any manner Lessor may choose; and
>     (d)    apply such security and direct the order and manner of sale thereof as Lessor or its assigns in its discretion may determine. Lessor or its assigns may, without notice, assign this Guaranty in whole or in part.

(**Ex. 2**, at 2.)

    49.    Section 8 of the Guaranty provides:

318779363v6

8.   Guarantor waives any right to require Lessor or its assigns to (a) proceed against Lessee, (b) proceeds against or exhaust any security held from Lessee, or (c) pursue any other remedy in Lessor or its assigns' power whatsoever.  Guarantor waives any defense arising by reason of any disability or other defense of Lessee or by reason of the cessation from any cause whatsoever of the liability of Lessee.  Until all the Obligations shall have been paid in full.  Guarantor shall have no right of subrogation and waive any right to enforce any remedy which Lessor or its assigns now has or may hereafter have against Lessee, and waive any interest in the property leased and any benefit of, and any right to participate in any security now or hereafter held by Lessor or its assigns.  Guarantor waives the provisions of Section 49-25 and 49-26 of the Code of Virginia of 1950, as amended.

(**Ex. 2**, at 2.)

50.   Section 9 of the Guaranty provides:

9.   Any indebtedness of Lessee now or hereafter held by Guarantor is hereby subordinated to the Obligations and any other indebtedness of Lessee to Lessor or its assigns and the indebtedness of Lessee to Guarantor, if Lessor or its assigns shall so request, shall be collected, enforced, and received by Guarantor as trustees for Lessor or its assigns and shall be paid over to Lessor or its assigns on account of the Obligations and any other indebtedness of Lessee to Lessor or its assigns but without reducing of affecting the liability of Guarantor under the other provisions of this Guaranty.

(**Ex. 2**, at 2-3.)

51.   Section 10 of the Guaranty provides:

10.   Upon a failure by Guarantor to comply with any of the terms of this Guaranty (a "Default"), Lessor may, at its option, declare this Guaranty to be in default by written notice to Guarantor (without election of remedies), and at any time thereafter, may do any one or more of the following, all of which are hereby authorized by Guarantor: (a) declare the Lease to be in default and thereafter sue for and recover all liquidated damages, accelerated rentals and/or other sums otherwise recoverable from Lessee thereunder; and/or (b) sue for and recover all damages then or thereafter incurred by Lessor as a result of such Default; and/or (c) seek specific performance of the obligations of Guarantor hereunder.  In addition, Guarantor shall be liable for all reasonable attorneys' fees and other costs and expenses incurred by reason of any Default or the exercise of Lessor's remedies hereunder and/or under the Lease. No right or remedy referred to herein is intended to be exclusive, but each shall be cumulative, and shall be in addition to any other remedy referred to above or otherwise available at law or in equity, and may be exercised concurrently or separately from time to time.

(**Ex. 2**, at 3.)

**D. Denvr Dataworks USA's Defaults**

52.   To date, Denvr Dataworks USA has failed to pay to CSC the amounts due and owing under the Lease Documents, including basic, monthly rent due under the Lease Schedules.

53.   As of the date of this Complaint, the last *full and timely* monthly payment that CSC received from Denvr Dataworks USA was for rental amounts due and owing for the month of November 2024.

54. After prior side agreements among the parties due to defaults by Denvr Dataworks USA, on, or about, May 13, 2025, CSC, Denvr Dataworks USA, and Denvr Corp. entered into and executed the May 2025 Forbearance Agreement. (**Ex. 3**.)

55. In the May 2025 Forbearance Agreement, CSC, Denvr Dataworks USA, and Denvr Corp. acknowledged and agreed that Denvr Dataworks USA failed to pay to CSC "the monthly Basic Rental due and owing under the Lease Documents for the months of January 2025, March 2025, April 2025, and May 2025, and such failure constitutes an Event of Default (the 'Specified Default') pursuant to Section 11 of the [Master Lease]." (**Ex. 3**, at 1.)

56. In the May 2025 Forbearance Agreement, CSC, Denvr Dataworks USA, and Denvr Corp. acknowledged and agreed that

> As a result of the Specified Default, CSC has the right: (1) pursuant to the Lease Documents, to collect all Basic Rentals and other amounts due to CSC under the Lease Documents; (2) pursuant to the Guaranty, to collect payment of the Obligations (as hereinafter defined) from the Parent; and, (3) pursuant to the Security Agreement, to foreclose upon the collateral specified therein.

(**Ex. 3**, at 1.)

57. The collateral referenced in the Security Agreement, referred to in the May 2025 Forbearance Agreement, is *separate and distinct from* the Leased Equipment and the property that was collateral does not comprise any of the Leased Equipment owned by CSC and itemized in the Lease Schedules.

58. Generally, the May 2025 Forbearance Agreement provided that CSC would forbear, temporarily, from exercising its rights and remedies against Denvr Dataworks USA and Denvr Corp. due to the uncured defaults, subject to certain conditions.

59. In the May 2025 Forbearance Agreement, each of Denvr Dataworks USA and Denvr Corp. confirmed and agreed as follows:

318779363v6

> 2. **CONFIRMATION OF OUTSTANDING BALANCE AND SPECIFIED DEFAULT.**
>
> a. Each of the Company and the Parent acknowledges and agrees that as of May 13, 2025, the aggregate amount owed and outstanding under the Lease Documents was not less than $3,354,323.00 (the "Outstanding Balance"). The foregoing amount does not include interest, fees, expenses and other amounts which are chargeable or otherwise reimbursable under the Lease Documents (together with the Outstanding Balance, the "Obligations"). The Company does not have any rights of offset, defenses, claims or counterclaims with respect to any of the Obligations.
>
> b. Each of the Company and the Parent acknowledges and agrees that: (i) the Lease Documents, the Guaranty and the Security Agreement constitute the legal, valid and binding obligations of the Company; (ii) the Specified Default constitutes an Event of Default and that there are no disputes as to the occurrence and continued existence of the Specified Default; (iii) CSC has the right to payment of the Obligations, to immediately enforce its right to payment of the Obligations, to immediately enforce its security interests in the collateral described in the Security Agreement, to immediately enforce its rights under the Guaranty, and to exercise all other rights, powers and remedies provided to CSC under the Lease Documents; (iv) pursuant to the terms of Section 12 of the MLA, interest on the Obligations will accrue at the default rate specified in such Section 12 (5% per annum); (v) pursuant to Section 4(a) of the MLA, CSC is entitled to a late charge equal to 5% of the amount due; and (vi) neither the Company nor the Parent has any defenses, offsets and/or counterclaims against CSC in connection with the Lease Documents, the Guaranty or the Security Agreement or against the enforcement thereof, and neither the Company nor the Parent shall not dispute or contest (or cause anyone else to dispute or contest) the validity or enforceability of the Lease Documents, the Guaranty, the Security Agreement or the priority, enforceability or extent of CSC's security interest in, and lien on, the collateral identified in the Security Agreement, either during or following the termination or expiration of the Forbearance Period set forth herein.

(**Ex. 3**, at 1.)

60. As of May 13, 2025, the then-outstanding amount due and owing to CSC from Denvr Dataworks USA, which excluded prospective, accelerated rent, was not less than $3,354,323.00. (**Ex. 3**, at 1.)

61. Pursuant to the May 2025 Forbearance Agreement, the parties agreed that the "Forbearance Period" would be the following duration:

> b. Forbearance Period. As used herein, the term "Forbearance Period" shall mean the period beginning on the Effective Date and ending on the earliest to occur of: (i) the date on which CSC delivers to the Company and the Parent a written notice terminating the Forbearance Period, which notice may be delivered at any time upon or after the occurrence of any Forbearance Default (as hereinafter defined); and (ii) 11:59 p.m. Eastern Time on July 31, 2025 (the occurrence of any of the foregoing clauses (i) and (ii), a "Termination Event").

(**Ex. 3**, at 2.)

62. The conditions and requirements for CSC to forbear included the following:

> 4. **CONDITIONS OF FORBEARANCE.** CSC's agreement to forbear from declaring an Event of Default and exercising any default-related rights and remedies against the Company and/or the Parent, is conditioned upon and timely satisfaction of each of the following conditions ("Conditions of Forbearance"):
>
> a. Promptly following the execution of this Agreement, but in no event later than May 27, 2025, the Parent shall transfer free and clear title to those assets specified in **Exhibit A** attached hereto (the "IG2 Assets") and shall execute any and all documents necessary to effect such transfer;
>
> b. Prior to or on May 27, 2025, the Parent shall provide written notice to the landlord of the premises where the IG2 Assets are located that the IG2 Assets have been transferred to CSC and consenting to CSC's recovery of the IG2 Assets, subject to any applicable access requirements of the landlord;
>
> c. No later than May 30, 2025, the Parent shall close the sale of thirty-two (32) A100s to exIT Technologies, including the A100s identified in **Exhibit B** attached hereto (the "A100 Assets") and shall remit to CSC no less than $1,500,000.00 resulting from such sale; and
>
> d. Prior to or on June 30, 2025, the Company will remit to CSC an amount equal to (x) the Outstanding Balance *minus* (y) the sum of (i) the net proceeds actually received as a result of CSC's sale of the IG2 Assets *plus* (ii) the amount actually received by CSC in connection with Section 4(c) herein.

(**Ex. 3**, at 2.)

13

63. Denvr Dataworks USA and Denvr Corp. failed to comply with the terms of the May 2025 Forbearance Agreement.

64. Upon termination of the Forbearance Period, the May 2025 Forbearance Agreement provides that:

> ii. Upon the occurrence of a Termination Event, the agreement of CSC hereunder to forbear from exercising any default-related rights and remedies shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which each of the Company and the Parent waives. Each of the Company and the Parent agrees that CSC may at any time thereafter proceed to exercise any and all of its rights and remedies under any or all of the Lease Documents, the Guaranty, the Security Agreement and/or applicable law, including, without limitation, its rights and remedies with respect to any Specified Default that is continuing at such time.

(**Ex. 3**, at 2.)

65. On July 22, 2025, CSC issued to Denvr Dataworks USA and Denvr Corp. a notice of default and acceleration and terminated the Forbearance Period, among other rights (the "July 2025 Notice Of Default & Acceleration"). (**Exhibit 6**, attached hereto, is a true and accurate copy of the July 2025 Notice Of Default & Acceleration.)

66. As set forth in the July 2025 Notice Of Default & Acceleration, Denvr Dataworks USA failed to pay to CSC amounts due and owing to CSC. (**Ex. 6**, at 1.)

67. As of July 22, 2025, and as set forth in the July 2025 Notice Of Default & Acceleration, the then-current amount due and owing to CSC from Denvr Dataworks USA was $3,091,005.11, comprised of $2,886,828.90 for accrued and unpaid monthly rent and taxes due under the Lease Documents and $204,176.21 for late charges and personal property tax amounts due under the Lease Document. (**Ex. 6**, at 1-2.)

68. Further, CSC exercised its right to seek and demand the accelerated, prospective rent due and owing to CSC under the Lease Documents:

> Additionally, and pursuant to Section 12 of the Master Lease, CSC is hereby accelerating the remaining Basic Rental amounts due to CSC under the Lease, which amount, as of July 22, 2025, is not less than $9,144,423.59, *exclusive of tax* and any amounts that would be owed to CSC in connection with a sale, disposition, and/or value of the Equipment.
>
> In summary, **the Company owes CSC a total of $12,235,428.70, exclusive of tax, due immediately.**

(**Ex. 6**, at 2.)

14

318779363v6

69. To date, neither Denver Dataworks USA nor Denvr Corp. has cured any of the defaults set forth in the July 2025 Notice Of Default & Acceleration.

70. Accordingly, both Denver Dataworks USA and Denvr Corp. remain in default under the Lease Documents.

71. On, or about, August 12 and 13, 2025, CSC exercised certain of its remedies under the Lease Documents by repossessing and taking control of the Leased Equipment.

72. Section 13 of the Master Lease provides, in relevant part, that Denvr Dataworks USA shall be liable to CSC for "all costs and expense (including reasonable attorneys' fees) incurred by [CSC] in retaking possession of , and removing, storing, repairing, refurbishing and selling or otherwise disposing of such Equipment . . ." (**Ex. 1**, at 5, § 13.)

73. To date, CSC has not otherwise sold or disposed of the Leased Equipment that it repossessed, and, currently, CSC is paying to store and maintain the Leased Equipment.

74. As to the collateral referenced in the Security Agreement—referred to in the May 2025 Forbearance Agreement, which collateral is *separate and distinct from* the Leased Equipment—Denvr Dataworks USA liquidated that collateral and equipment and issued transferred payment to CSC, which payment amount has been applied to the outstanding balance due and owing to CSC.

75. As of the filing of this Complaint, the total amount due and owing from Denvr Dataworks USA and Denvr Corp., jointly and severally, to CSC is not less than $12,583,980.13, which amount is comprised of the following components: (a) $3,470,189.42, for past due, monthly basic rent and monthly taxes and charges in connection with the Lease Schedules; (b) $8,606,516.32, for prospective rent due in connection with the Lease Schedules; (c) $262,512.27 in late fees; (d) assessed and unpaid 2024 personal property taxes of $234,054.12; and (e)

$10,708.00, for legal fees and expenses as of September 12, 2025.

76.     Additionally, Denver Dataworks US and Denvr Corp. owe to CSC the costs, fees, and expenses accrued, but not yet invoiced and paid by CSC, in connection with the repossession and storage of the Leased Equipment.

## CAUSES OF ACTION
## COUNT I – BREACH OF CONTRACT – DENVR DATAWORKS USA

77.     Plaintiff CSC incorporates by reference, as though fully restated herein, each of the allegations stated at paragraphs 1 through 76, above.

78.     The Lease Documents—including the Master Lease, the Guaranty, the Lease Schedules, the Acceptance Certificates, and May 2025 Forbearance Agreement—by and between CSC and Denvr Dataworks USA were duly executed, and those documents comprise a valid contract between CSC and Denvr Dataworks USA providing for, without limitation, the timely payment of the amounts due under the respective terms of each applicable agreement.

79.     Denvr Dataworks USA has materially breached the Master Lease through the series of acts and omissions described in this Complaint, including, without limitation, the defaults described above.

80.     Denvr Dataworks USA's breaches of the Master Lease and Lease Schedules are the direct and proximate cause of damages to, and harm sustained by, CSC.

81.     CSC, therefore, seeks a judgment against Denvr Dataworks USA in the amount of $12,583,980.*13 plus* prejudgment interest from February 10, 2025; until the date of judgment, post-judgment interest; and costs, including reasonable attorney's fees and storage and repossession expenses.

## COUNT II – BREACH OF CONTRACT – DENVR CORP.

82.     Plaintiff CSC incorporates by reference, as though fully restated herein, each of the

16

allegations stated at paragraphs 1 through 81, above.

83. The Lease Documents—including the Master Lease, the Guaranty, the Lease Schedules, the Acceptance Certificates, and the May 2025 Forbearance Agreement—by and among CSC, Denvr Corp., as applicable, and Denvr Dataworks USA were duly executed, and those documents comprise a valid contract between CSC and Denvr. Corp. providing for, without limitation, the timely payment of the amounts due under the respective terms of each applicable agreement.

84. Pursuant to the Guaranty, CSC may enforce against Denvr Corp. its rights and remedies, including payment and performance, of all of Denvr Dataworks USA's obligations due and owing to CSC.

85. Denvr Corp. has materially breached the Guaranty through the series of acts and omissions described in this Complaint, including, without limitation, the defaults described above.

86. Denvr Corp.'s breaches of the Guaranty are the direct and proximate cause of damages to, and harm sustained by, CSC.

87. CSC, therefore, seeks a judgment against Denvr Corp. in the amount of $12,583,980.*13 plus* prejudgment interest from February 10, 2025; until the date of judgment, post-judgment interest; and costs, including reasonable attorney's fees costs, including reasonable attorney's fees and storage and repossession expenses.

## RESERVATION OF RIGHTS

88. CSC reserves all rights, claims, and defenses as to each of Denvr Dataworks USA and Denvr Corp., as well as each Defendant's insiders, owners, principals, directors, members, affiliates, and/or subsidiaries. Nothing herein shall be construed as a waiver of, or otherwise prejudice, CSC rights, claims, remedies, and defenses as to each of the Defendants, the Lease

Documents, the Leased Equipment, and/or any other individual or entity, including, without limitation, to amend this Complaint based on any additional facts that may become known after the filing of this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff CSC requests that the Court enter an order:

A. Granting judgment in CSC's favor and awarding an amount to be proven at trial, but not less than $12,583,980.13;

B. Awarding prejudgment and post-judgment interest;

C. Finding and concluding that Denvr Dataworks USA has materially breached the Lease Documents;

D. Finding and concluding that Denvr Dataworks USA has forfeited the advance payments and security deposits in the amount of $1,075,824.00;

E. Finding and concluding that Denvr Corp. has materially breached the Guaranty and, in turn, materially breached the Master Lease;

F. Directing Denvr Data Works USA and Denvr Corp., jointly and severally, to pay to CSC the amount of past due, monthly rent and prospective, accelerated rent due in connection with the Lease Documents, and all other amounts due and owing under the Lease Documents;

G. Awarding to CSC the costs, expenses, and fees incurred by CSC in connection with its repossession and storage of the Leased Equipment;

H. Awarding to CSC the costs, expenses, and fees incurred by CSC in pursuing this action, including, without limitation, reasonable attorneys' fees and costs; and

I. Providing such further relief that the Court deems proper.

318779363v6

DATED: September 12, 2025                    CSC LEASING CO.

*/s/ James Donaldson*
James K. Donaldson, Esq. (VSB No. 80307)
Jonathan DeMars, Esq. (VSB No. 96426)
Troutman Pepper Locke LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 697-1200 (telephone)
(804) 697-1339 (facsimile)
jed.donaldson@troutman.com
jonathan.demars@troutman.com

*Counsel to Plaintiff CSC Leasing Co.*

19

318779363v6

## SCHEDULE 1 – LEASE SCHEDULE DETAILS

| SCHEDULE | DATE | BASIC RENT | MONTHLY RENT WITH TAX | OUTSTANDING RENT[1] | PROSPECTIVE RENT[2] |
|---|---|---|---|---|---|
| A | July 2, 2024 | $26,453.80 | $26,689.15 | $165,875.43 | $423,260.80 |
| B | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| C | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| D | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| F | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| G | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| H | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| I | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| J | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| K | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| L | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| M | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| N | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| O | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| P | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| Q | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| R | July 2, 2024 | $26,453.80 | $26,689.15 | $172,134.90 | $423,260.80 |
| S | July 2, 2024 | $26,453.80 | $26,689.15 | $164,134.90 | $423,260.80 |
| T | July 2, 2024 | $26,453.80 | $26,689.15 | $164,134.90 | $423,260.80 |
| U | July 2, 2024 | $26,453.80 | $26,689.15 | $164,134.90 | $423,260.80 |
| V | July 2, 2024 | $8,831.27 | $9,577.52 | $56,250.89 | $141,300.32 |

|  | MONTHLY RENT WITH TAX | OUTSTANDING RENT | PROSPECTIVE RENT |
|---|---|---|---|
| **TOTALS** | **$583,360.52** | **$3,470,189.42** | **$8,606,516.32** |

**TOTAL OF OUTSTANDING & PROSPECTIVE RENT**     **$12,076,705.74**

---

[1] "Outstanding Rent" includes A/R and amounts invoiced through September 2025, and, as to all Lease Schedules reflects five (6) outstanding months, including taxes, other than certain instances where CSC received a partial payment(s), such as with Lease Schedules A, S, T, U, and V.

[2] "Prospective Rent" represents sixteen (16) months' basic rent, without tax, remaining due under the original term of each Lease Schedule, for October 2025 forward.

318779363v6